1841.

Schryver
v.
Teller

---

### Schryver & Teller *vs.* Teller and others.

The principle that lands consisting of different parcels, subject to a general incumbrance, are in equity to be charged in the inverse order of the alienation of the several parcels, applies to cases where the owner of the lands has given thereon several mortgages of different dates.

A general lien will be thrown upon such particular parcel of land as will give a mortgagee the benefit of the priority of his mortgage upon the lands of the mortgagor, or upon a part thereof, over subsequent incumbrancers, either upon the whole premises or upon a part thereof.

This was an application by W. F. Teller, one of the defendants in a foreclosure suit, whose mortgage upon the premises was prior in date to the mortgage of the complainants, to modify a decree which had been entered upon the bill taken as confessed, under the following circumstances: Tobias Teller the mortgagor owned land at Redhook and also land at Coxsackie, subject to the lien of several judgments, in the supreme court, recovered previous to the 28th of May, 1840. The property at each place was also subject to the incumbrance of several mort-

May 4.

Schryver
v.
Teller.

gages previous to that date. On the 28th of May, 1840, T. Teller mortgaged the Coxsackie property to W. F. Teller the petitioner, to secure the payment of $2000; and on the 7th of July thereafter he mortgaged the same premises to the complainants Schryver and B. F. Teller, to secure the payment of $1500. On the 9th of June, 1840, he mortgaged the Redhook property to Platt, Staats, and Bonesteel, to secure the payment of $4000; a part of which was afterwards paid out of the other property. And on the 12th of the same month he mortgaged the same premises to Schryver and B. F. Teller to secure the payment of $10,000. After the giving of the mortgage to the petitioner, upon the Coxsackie property, and before the mortgage to Platt, Staats and Bonesteel, Platt and Van Steenburgh recovered a judgment against the mortgagor, for about $3000; which was docketed on the 3d of June, 1840, and thus became a lien upon the lands both at Coxsackie and Redhook.

The bill in this cause was filed before the chancellor to foreclose the complainants' mortgage of the 7th of July, 1840, upon the Coxsackie property; in which suit all the prior incumbrancers were made defendants. The bill was taken as confessed; and the master having reported as to the amounts and priorities of the several liens, the usual decree of foreclosure and sale was entered, on the 5th of January, 1841; except that in the decree the costs of the complainants were directed to be paid in preference to the incumbrances which were prior to their mortgage. Platt, Staats and Bonesteel also filed a bill, by the same solicitor, before the vice chancellor of the second circeit, to foreclose their mortgage of the 9th of June, 1840, upon the Redhook property; in which suit all the prior mortgagees and judgment creditors who had liens on that property were made parties. A similar decree was entered in that suit, on the 13th of January, 1841; except that the master was directed to pay the judgments which were prior to the complainants' mortgage, unless it should be made to appear to the master that the judgments had previously to

the sale been paid out of other property of the mortgagor; or unless there should be other funds in the hands of the master, the avails of other property, sufficient to satisfy such judgments wholly or in part; in which case he was only to satisfy the amount of the judgments which should be and remain unpaid. The master sold the Redhook property on the 2d of March, for about $34,000; which was more than sufficient to satisfy all the liens upon those premises which were prior in point of time to the mortgage of the petitioner upon the Coxsackie property. And on the 23d of the same month he sold the last mentioned lands, for about $12,600; which was not sufficient to pay the costs of the foreclosure, and the mortgage of the petitioner, if the previous judgments as well as the prior specific liens upon that property were paid out of such sale. The petitioner therefore asked that the decree in this cause might be modified, so as to throw the judgments upon the surplus proceeds of the Redhook premises, after satisfying all other liens thereon which were prior in time to the date of his mortgage on the Coxsackie property; and that the costs of the complainants might be postponed to the payment of the prior mortgages.

The objection being made that the decree had been enrolled and could not therefore be modified upon petition, and that an application to the vice chancellor in the other suit would be necessary; the chancellor intimated an opinion that it might be proper to make an order to stay the master from paying over the funds under the decree until the petitioner could file a bill of review, or a supplemental bill in the nature of a bill of review, to bring the question in controversy between the parties properly before the court. And the counsel who opposed the application thereupon waived all objections of form, and consented to submit the question as to the equities of the parties to the court, without the expense and delay of filing a bill.

*D. Burwell*, for the petitioner.

*L. Maison*, for the opposing creditors.

THE CHANCELLOR. Upon the hearing of this motion, I was inclined to the opinion that it was a proper case for contribution; so that the prior judgments should be paid out of the proceeds of the Redhook property and of the premises sold under the decree in this suit, pro rata. Upon further examination of the question, however, I see nothing to take this case out of the general principle, established in the case of *Clowes* v. *Dickinson,* (5 *John. Ch. Rep.* 241,) and other cases in this court, that lands consisting of different parcels, subject to a general incumbrance, are in equity to be charged in the inverse order of the alienation of the several parcels. The Redhook property was more than sufficient to satisfy the judgments and all other incumbrances thereon prior to the 28th of May, 1840, when the owner of the equity of redemption in both parcels mortgaged the Coxsackie premises to the petitioner. If the judgment creditors, therefore, were seeking to enforce the collection of their judgments against the last mentioned premises, to the prejudice of his mortgage, he would have an equitable right to insist that if he paid the judgments he should have an assignment thereof; to enable him to obtain a repayment out of the surplus proceeds of the Redhook property, in preference to purchasers or incumbrancers of that property whose claims thereon had accrued subsequent to the date of his mortgage. Had there been a mortgage upon both portions of this property, and a suit had been instituted to foreclose that mortgage, and the incumbrancers upon different portions of the premises as well as those who had general liens on the whole had been made parties to the suit, it would have been a matter of course, in the decree of foreclosure and sale, to direct the different pieces to be sold separately; and to marshal the proceeds arising from the sale of each parcel in such a manner as to pay general liens upon the whole premises out of that part of the fund which was produced by the sale of the Redhook property; so far as should be necessary to give the petitioner the benefit of the priority of his mortgage upon the Coxsackie lands, over the sub-

sequent incumbrancers of the lands at Redhook or of the whole premises. And the equities of the parties are the same, although the sale of the different portions of the premises took place under decrees in two different suits instituted to foreclose mortgages against distinct parcels of the property. Here the fund arising from the Redhook lands was sufficient to satisfy the specific liens, on that part of the property of the mortgagor, which were prior in date to the petitioner's mortgage on the lands at Coxsackie; and all the incumbrances on both parcels which were prior liens. The judgments therefore should be left to be paid out of that fund, under the decree of the vice chancellor, which decree provides for the payment of such judgments if they are not otherwise satisfied; so as to permit the monies arising from the sale under the decree in this suit, after satisfying the prior specific liens on the Coxsackie property and the costs of the complainants, to be applied to the satisfaction of the petitioner's mortgage on that property. But if the monies arising from the sale in this suit are more than sufficient to satisfy the petitioner's mortgage, and the prior specific liens upon the premises, the surplus must be applied to satisfy the judgments which are prior in date to the mortgages of Platt, Staats and Bonesteel, and of Teller and Schryver, upon the Redhook property; so as to give those mortgagees the same benefit of priority, over the subsequent judgment against the mortgagor and the petitioner W. T. Teller.

Although it is usual to direct the prior incumbrances upon the mortgaged premises to be paid in preference to the complainant's costs of foreclosure under a prior mortgage, there is nothing inequitable, in the present case, in letting the decree remain as it is as to the costs of foreclosure. From the peculiar situation of the premises and of the prior incumbrances thereon, one of which incumbrances was in favor of these complainants, the premises must necessarily have been subjected to the costs of a foreclosure suit to enable the petitioner to obtain the benefit of his mortgage. And he has lost nothing by the suit being in-

stituted for the foreclosure of the mortgage which was ju-nior to his ; instead of their mortgage of the 27th of May, which was entitled to a priority in payment. The decree must therefore be modified in respect to the order of payment of the incumbrancers merely ; so as to give to the petitioner's mortgage of the 28th of May an equitable priority over the subsequent incumbrances upon the Redhook property, but leaving it to stand as it now is as to the complainant's costs. And as the costs of this application to modify the decree have been caused by the neglect of the petitioner to present his equitable claim to priority in respect to his mortgage at an earlier day, as he might have done when the decree of foreclosure was applied for, he must pay the complainant's costs on this application ; which costs are allowed at $12, without taxation.