PHILIP C. JOHNSON, Plaintiff in Error, *vs.* ABIGAIL WILLIAMS, Executrix, etc., et al., Defendants in Error.

ERROR TO DISTRICT COURT OF RAMSEY COUNTY.

When the foreclosure of a mortgage is had by advertisement under a power of sale which authorizes a sale of the whole premises on default, a strict observance of the power and a sale of the whole premises, even if a lesser portion of the land would suffice to pay the debt, is regular, because it is fully authorized by the mortgagor; but a Court of Chancery will always interfere upon the application of the mortgagor or his representatives, and restrain the full exercise of such a power by the mortgagee, where the land greatly exceeds in value, the amount of the debt, and confine the sale to " such part of the land as may be sufficient to discharge the amount due on the mortgage, and costs."

The proper time to make such an application is before the sale takes place, and where the mortgagor allows the sale to take place without interference or objection on his part, he must excuse such neglect, or a Court of Chancery will not relieve him; but will grant the relief when he shows good and sufficient reasons why he did not object and apply before the sale took place, while the lands remain in the hands of the original parties to the mortgage, and it is clear that his interests have been sacrificed. Absence from the State is not as a general rule, an excuse for delay, but it may be when necessary and not designed, and where the only effect of admitting the plea will be to restore the parties to their original positions.

If the owner of mortgaged lands sells portions of them to third parties, retaining part of them himself, the portion so remaining in the mortgagor, is primarily liable for the debt secured by the mortgage, and the portions sold are liable in the inverse order of their alienation. If the mortgagee release the land retained by the mortgagor, from the lien of the mortgage, the security is thereby cancelled to the extent of the value of the land so released, and he would be permitted to collect only the balance out of the lands in the hands of the grantees of the mortgagor. If the land released would have been of value sufficient to have paid the whole mortgage debt, the security will be entirely gone.

This was an application to set aside a sale made by the Sheriff of Ramsey county, under a power of sale contained in a mortgage. Default having been made in the conditions of the mortgage, the same was foreclosed by advertisement under the Statute. The mortgage was dated May 12, 1857, and was given upon the " Southerly forty-five acres from the W. hf of N. E. qr. of Sec. 30," etc., etc. Subsequent to the date of the mortgage, the mortgagor conveyed to the Plaintiff and to one Eastman Johnson, three separate parcels of this tract, for adequate considerations, etc., the deeds to which parcels were recorded previous to the date of the notice of sale upon the foreclosure of the mortgage. These deeds conveyed to the Plaintiffs, some 33 89-100 acres of the mortgaged premises, the mortgagor retaining and owning at the date of the foreclosure, the balance of the 45 acres, (11 and 11-100 acres) which tract, with the improvements thereon, was worth at the date of the foreclosure (as alleged in the complaint,) at least six thousand dollars, and that the tracts sold to Eastman Johnson, were worth at least four thousand dollars," and that either of the two parcels sold to Eastman Johnson are worth more than the difference between the said value of the parcel retained by said Newton, and the amount of said mortgage debt, and that if the said parcels can be sold in the order in which they are primarily liable, the full amount of the mortgage debt can be realized without resorting to a sale of any portion of the parcel belonging to the Plaintiff."

It is further alleged that upon the sale the Sheriff offered the whole tract for sale, according to its description in the mortgage, without regard to the equities of those holding the title to parts of the premises, and that the Defendants bid upon the whole tract the sum of $7,150.

No demand was made on behalf of the Plaintiff, on the day of sale, that the land should be sold in a particular manner, or that he claimed any equities therein, and the action was brought just before the time for redemption expired, to restrain the Sheriff from executing a deed, etc.,—the Plaintiff excusing the want of appearance at the day of sale, by alleging that he was " an officer in the United States Navy, and has been for the past year on duty on a foreign cruise, and that until within

33

a few days, he has had no notice of the proceedings had on the aforesaid mortgage foreclosure."

The Defendants demurred to the complaint upon the general ground that it showed that the foreclosure was in all respects regular and legal, and that the Plaintiff did not show himself entitled to any equitable relief, etc.

The District Court sustained the Demurrer and final judgment was entered against the Plaintiff, who reviews here by Writ of Error.

Points and authorities of the Plaintiff in Error :

*First.*—The demurrer to the complaint in this action admits all the material allegations charged in the complaint to be true ; therefore it stands fully admitted in the record that the Defendants in error and each of them, had full notice of all the equities claimed by the Plaintiff in error, also that the value of the mortgaged premises, and of each parcel thereof is as stated in the complaint, and the parcel still held by the Defendant Newton, together with the two parcels sold to Eastman Johnson, which are the parcels primarily liable, before the parcels of the Plaintiff, are ample to satisfy the whole mortgage debt. 1 *Chitty's Pl.* 662.

*Second.*—When the mortgagor aliens and conveys portions of the mortgaged premises to different persons, at different times, retaining a portion in himself, the portion so remaining in himself is primarily liable for the mortgage debt, and the other portions are liable in the inverse order of alienation ; and on a foreclosure of the mortgage by any party with notice of the subsequent conveyances, the portion so remaining in the mortgagor must be first sold and the other portions must be sold in the inverse order of alienation. *La Farge Fire Insurance Co. vs. Bell*, 22 *Barb. S. C.* 54 ; *Patty vs. Pease & Seymour*, 8 *Paige* 277 ; *Guion vs. Knapp*, 6 *Paige*, 35 ; *Clowes vs. Dickinson*, 5 *John. Ch.* 235 ; *Schriver vs. Teller*, 9 *Paige* 173 ; *Stuyvessant vs. Hall*, 2 *Barb. Ch. R.* 151; *Kellog vs. Rand*, 11 *Paige* 59 ; 1 *Hill'd on Mort's* 326 *et seq.*; *Howard Ins. Co. vs. Halsey et al.*, 4 *Selden* 271 ; *Ellison vs. Pecare et als.*, 29 *Barb. S. C.* 333.

*Third.*—The mortgagee of a mortgage of real estate con-

taining a power of sale in the usual form, could sell the land on default and pay himself, returning the surplus to the mortgagor, before the enactment of any Statutes relating to and regulating mortgage foreclosures by advertisement.    This was a common law right, and the Statutes regulating such foreclosures are intended merely to regulate and prescribe the *manner* of obtaining the identical remedy to which the mortgagee is entitled without any Statute. The *effect* of the remedy is the same in both cases.    *Lawrence vs. Farmer's Loan and Trust Company*, 3 *Kernan* 200 ; *Longworth vs. Butler, Gillman's Illinois R. Vol.* 3, *page* 32; 1 *Powell on Mortgages*, 13, *and Coventry's note " K," same page, Croft vs. Powell, Comyns R.* 603–7–8 ; *Wilson vs. Troup*, 2 *Cow.* 277.

The intent of the statutory provisions being to effect in a particular manner a sale, which should have the same effect as a sale under and pursuant to the power without the sanction of Statutes, it follows that the statutory foreclosure in question no more barred or cut off the Plaintiff's equitable right to have the mortgaged premises sold in the order in which they were primarily liable, than would a sale so had *without* the sanction of Statutes controlling the same, and it will not be pretended that such a sale, made in the absence of and without the sanctions of Statutes, and solely with reference to the right which the common law gives to the mortgagee, would cut off from the Plaintiff, his right to have the portions primarily liable first sold and appropriated in payment of the mortgage debt.

*Fourth.*—Had the mortgage in question been foreclosed in chancery, and the Plaintiff made a party defendant to the action, it will be conceded that he could have set up his equities by answer, and the decree would have directed the mortgaged premises to be sold in the order in which they are primarily liable, first directing a sale of the portion remaining in Newton the mortgagor, then the two portions conveyed to the Defendant Eastman Johnson, and last of all, and only in case of the inefficiency of the other portions, the parcel owned by the Plaintiff; and every equitable right which the Plaintiff could so have established in an action in chancery to foreclose, will be protected and enforced in this Court on his application for that purpose, notwithstanding the statutory foreclosure.

These rights cannot be taken from him without his consent. Suppose the mortgagee had released from the mortgage debt all of Newton's portion of the premises, and had then foreclosed by advertisement and sold the balance of the premises. In such case it cannot be questioned that the Plaintiff's right to annul and cancel the sale would be perfect, for if the portion so released was sufficient of itself to pay the mortgage debt, the Plaintiff's land would, *instanter*, on the release, be discharged wholly from the debt; and if a regular statutory foreclosure cannot cut off the equitable right existing in the *supposed* case, no more can it cut off the Plaintiff's equities in this case. *St. John vs. Bumpsted*, 17 *Barb. S. C.* 100 ; 14 *John.* 435. These cases fully admit the remedy in such cases. As to Plaintiff's rights in an action to foreclose in chancery where he was a party defendant, see cases cited under second point. As to effect of releasing from a mortgage the portions primarily liable, *See Guion vs. Knapp*, 6 *Paige* 35 ; 1 *Hill'd* 329 ; *McLean vs. Lafayette etc.*, 3 *McL.* 587 ; *Laxton vs. Harris*, 11 *Penn.*, (1 *Jones*) 312 ; *Parkham vs. Welch*, 19 *Pick.* 238 ; *Mevy*, 4 *Barr.* 80.

That the statutory foreclosure is no bar to these equities of Plaintiff's *see* 17 *Barb. S. C.* 100 ; 14 *John.* 435 ; 1 *Manning* (*Mich.*) 338.

*Fifth.*—The said foreclosure was irregular and void in that the mortgaged premises consisted of four distinct and separate parcels, with full notice to the mortgagees and purchasers, of the said division into parcels, but at the said sale the said premises were not offered for sale or sold in separate parcels, but as one parcel, in violation of the Statutes in such case provided. *R. S. p.* 435.

*Sixth.*—The said mortgage sale was irregular and void because the notice of said mortgage sale did not conform to the Revised Statutes in such case provided, in this, that in the said notice the amount claimed to be due, was not the amount actually due, but was a larger sum than was actually due by the sum of $179.60. *R. S. p.* 435 ; 5 *John. Ch.* 35.

Had a bill been filed, the Plaintiff could have had his equities established by setting them up in an answer, and if he could show a good excuse, might have been relieved at any

time within one year after the decree of foreclosure. Would not the facts set up by the complaint here, entitle him to relief against such a decree?

Points and authorities of Defendants in Error:

*First.*—The sale of the mortgaged premises in question was regular and was made under and by virtue of a power of sale contained in the mortgage executed by Newton. The power was a valid power. *R. S. (Col.)* 392, *Sec.* 2; *Jackson vs. Colden,* 4 *Cow.* 281; *Longworth vs. Butler,* 3 *Gilm.* 36, 38, *and cases there cited; Jackson vs. Henry,* 1 *Paige Ch.* 194; *Doolittle vs. Lewis,* 7 *John. Ch.* 46; *Bronson vs. Kinzie,* 1 *How. (S. C. U. S.)* 321; *Story Eq. Vol.* 2, *Sec.* 1027; 4 *Kent's Com.* 146; 2 *Cowen* 236; 1 *Hill on Mortgages* 90 *et sequiter.*

The power was valid, and the mortgagee could make the sale on default in a case where he was named and made in the mortgage the trustee. *See* 6 *Madd. Ch. R.* 15; 3 *Gilman* 38.

*Second.*—The power of sale contained in the mortgage could be executed by the assignee of the mortgagee. *R. S.* 396, *Sec.* 60.

*Third.*—The lands embraced in the mortgage were described therein by the mortgagor as one tract. Upon a foreclosure of the mortgage by advertisement, a sale of the lands as one tract as described in the mortgage was valid and conformed in all respects to the provisions of the Statute, notwithstanding the conveyances of portions thereof by the mortgagor subsequent to the execution and record of the mortgage. *Lamerson vs. Marvin,* 8 *Barb.* 12, *and cases above cited.*

The Statute requiring mortgaged premises to be sold in parcels was designed to provide for a sale of premises consisting at the time of giving the mortgage, of distinct farms or tracts and mortgaged and described as such. *Vide case last cited above.*

*Fourth.*—The notice of sale required by the Statute having been given, the sale was binding upon the mortgagor and his assigns, and all persons having liens or interests in the mortgaged premises subsequent to the date of the mortgage, subject only to the right of redemption. *Damerest vs. Wynkoop,* 3 *John. Ch. Cas.* 144; *Slee vs. Manhattan Co.,* 1 *Paige Ch.* 71;

*Jackson vs. Henry*, 10 *John.* 194 *and* 195 ; *Jackson vs. Colden*, 4 *Cow.* 281.

The Statute makes no exception. The sale binds infants, etc., although laboring under legal disabilities. *See case of Damerest vs. Wynkoop, above cited.*

*Fifth.*—By intendment of the Legislature a mortgagee making a sale of mortgaged lands under a power of sale contained in the mortgage, may become the purchaser of the lands at the sale, even if he is designated in the mortgage as the person to execute the power. *Jackson vs. Colden*, 4 *Cow.* 266 *and* 276; *R. S. (Col.)* 644, *Sec.* 9; 1 *Hill. on Mortgages*, 92, 93.

The sale is valid even although the mortgagee or his assignee held the mortgage in trust, as in the case at bar. It is at the option of the *cestui que trust* to consider her a trustee, and as holding the estate in trust. *Vide Slee vs. Manhattan Co.,* 1 *Paige Ch.* 54, *and cases above cited.*

*Sixth.*—The sale of the mortgaged premises was made under the power, and is not within that clause of the Constitution providing that a person shall not be deprived of his property without due process of law.

The power of sale can be executed without the aid of any court. The sale under the power was extra-judicial. 7 *John. Ch. R.* 46 ; 10 *John. Ch. R.* 194 ; 1 *Paige Ch. R.* 71.

It was the mere execution of a trust. 4 *Cow.* 281.

*Seventh.*—The application of Plaintiff in error (if it could be made at all) to set aside the sale, should have been made before the day of the sale of the mortgaged lands. *Doolittle vs. Lewis,* 7 *John. Ch. R.* 49.

GEO. L. & E. A. OTIS, Counsel for Plaintiff in Error.

VAN ETTEN & OFFICER, Counsel for Defendants in Error.

*By the Court.*—FLANDRAU. J. All the right that a mortgagee of land has in the mortgaged premises is to subject them to the payment of his debt. The mortgage is but an incident to the debt, for which the land stands as a pledge, or security. The mortgagee has but a chattel interest measured by the amount of the debt. 1 *Hilliard on Mortgages* 215–16.

When the debt is paid the mortgage is cancelled.    The mortgagee is regarded in many respects as the trustee of the mortgagor's rights, subject to the security, and as such has no right to speculate with the lands, but must observe the utmost good faith in making his debt, doing no act that will prejudice the rights of the mortgagor.    1 *Hilliard on Mortgages* 339.

It is the policy of the law of this State that all forced or judicial sales of land, under mortgages or executions for the collection of debts, should be confined to such portions of the incumbered premises as are sufficient to satisfy the debt. *Pub. Stats. p.* 572, *Sec.* 112 ;  *Ib.* 644, *Sec.* 8 ; *Ib.* 671, *Sec.* 9.    This is the unbending rule in sales under executions, and where a foreclosure of a mortgage is had in chancery, the decree directs " a sale of the mortgaged premises or such part thereof as may be sufficient to discharge the amount due on the mortgage and the costs of suit." *Pub. Stat. p.* 671, *Sec.* 9.    When the foreclosure of a mortgage is had by advertisement under a power of sale which authorizes a sale of the whole premises on default, a strict observance of the power and a sale of the whole premises, even if a lesser portion of the land would suffice to pay the debt, is regular, because it is fully authorized by the mortgagor ; but notwithstanding such power, a court of chancery will always interfere upon the application of the mortgagor or his representatives, and restrain the full exercise of such a power by the mortgagee where the land greatly exceeds in value the amount of the debt, and confine the sale to " such part of the land as may be sufficient to discharge the amount due on the mortgage and costs."

The proper time to make such an application is before the sale takes place, as where the mortgage confers upon the mortgagee the power to sell the whole premises, it is to be presumed that he will take advantage of it, and when the mortgagor allows the sale to take place without interference or objection on his part, he must excuse such neglect fully, or a court of chancery will not relieve him.    But when he shows good and sufficient reasons why he did not object and apply before the sale took place, and while the property remains in the hands of the original parties to the mortgage, as when it is purchased in by the mortgagee or assignee of the mortgage, and it is

clear that a sacrifice of the mortgagor's interests have been made, a Court of Equity will interpose and set aside the sale, and order a re-sale to be made of such parts only of the land as may be sufficient to discharge the debt.

It is a very well settled rule of equity that if the owner of mortgaged lands sells portions of them to third parties, retaining part of them himself, the portion so remaining in the mortgagor, is primarily liable for the debt secured by the mortgage, and the portions sold are liable in the inverse order of their alienation. 22 *Barb. S. C. R.* 54; 8 *Paige* 277; 6 *Paige* 55; 5 *John. Ch.* 225; 9 *Paige* 173; 2 *Barb. Ch.* 151; 11 *Paige* 59; 1 *Hilliard on Mortg.* 326; 29 *Barb. S. C.* 333; 4 *Selden* 271. As soon as the mortgagor aliens any portion of the mortgaged lands, an equity arises in favor of the grantee, to have the mortgage first satisfied out of the lands remaining in the hands of his grantor, and the mortgagee is bound to recognize this equity and respect it in all his dealings with the mortgaged premises. So binding is this equity upon the mortgagee, that if he should release the lands retained by the mortgagor from the lien of the mortgage, his security would be cancelled to the extent of the value of the lands so released, and he would be permitted to collect only the balance of the debt out of the lands in the hands of the grantees of the mortgagor. And if the land released would have been sufficient to have paid the whole mortgage debt, his security will be entirely gone. *See case above cited.*

These rules are all founded upon the principle that the mortgagee has no greater interest in the land than to make his debt out of it; and that in doing so he must regulate his proceedings so as to do as little damage to the interests of other parties concerned in the land as possible, consistently with the full enforcement of his own.

When Newton sold a portion of the mortgaged premises to the Plaintiff, an equity arose in favor of the latter, that the lands remaining in Newton should be first subjected to the payment of the mortgage debt. If the owner of the mortgage had foreclosed in chancery, an answer by the Plaintiff in this suit, who would have been a Defendant there, setting forth his equity, would have secured a decree ordering a sale of the

premises in parcels, beginning with Newton's and ending with the Plaintiff's if the debt was not satisfied before reaching him. But the owner of the mortgage proceeded as he had a right to, to foreclose without invoking the aid of any court. The mere fact that the mortgagor by his own act, which was binding upon his grantee, had deprived him of the privilege of being made a Defendant where he could plead his equities, did not destroy those equities, nor cut him off from the means of enforcing them. A court of equity possesses and will exercise the power to relieve parties against their own acts when a literal enforcement of them will operate a forfeiture, or result in oppression.

The complaint alleges that the Defendants were fully advised before the sale, of the equities of the Plaintiff, and that the lands primarily liable would have more than paid and satisfied the debt. It also shows that the reason the Plaintiff did not apply to the court for the protection of his rights before the sale, was because he was an officer in the navy and absent upon a foreign cruise, and knew nothing about the foreclosure.

Absence is not, as a general rule, an excuse for delay; it is the voluntary act of the party, and he is responsible for its consequences; but it may when necessary and not designed, as in this case, relieve a party from the charge of actual negligence, and especially when by admitting the plea, no newly acquired rights of innocent parties are to be disturbed, but the only effect will be to restore the parties to their original positions.

The case of *Doolittle vs. Lewis and others,* 7 *John. Ch. R.* 44, cited by the Defendant's counsel, to show that the Plaintiff was too late, is a very different one from the case at bar. There the Plaintiff suffered the sale to take place without objection, and titles to be acquired under it by third parties without notice, and waited for upwards of five years before he filed his bill. The court held that he was too late, and on a similar state of facts, I doubt not that this court would follow the same rule of decision.

We think the Plaintiff under the circumstances of the whole case has not lost his right to be heard upon his equities, and that the demurrer to his complaint was improperly sustained. The

34

judgment is reversed and the case remanded. If a re-sale takes place it must be at the expense of the Plaintiff, Philip C. Johnson, as by a more timely application the first sale would have saved his rights.

*Justice Atwater dissents.*